IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SHELLY ROUDABUSH, | ) | |
| | ) | |
| Plaintiff, | ) | CIVIL ACTION NO. 3:15-CV-059 |
| | ) | |
| v. | ) | JUDGE KIM R. GIBSON |
| | ) | |
| RONDO, INC., RONDO BURGDORF AG, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

### I. Introduction

Before the Court is Defendants' motion for summary judgment. (ECF No. 59.) The issues have been fully briefed (*see* ECF Nos. 60, 74, 137) and the motion is ripe for disposition. For the reasons that follow, Defendants' motion will be **GRANTED**.

### II. Jurisdiction

The Court has subject matter jurisdiction over the instant action pursuant to 28 U.S.C. §1332 and 28 U.S.C. § 1441. Venue is proper pursuant to 28 U.S.C. § 1391.

### III. Background

Plaintiff initiated this action by filing a complaint in the Court of Common Pleas of Philadelphia County, Pennsylvania, on October 22, 2014. (*See* ECF No. 1, exhibit A.) Defendants removed the case to the United States District Court for the Eastern District of Pennsylvania on November 12, 2014. (*See* ECF Nos. 1, 3.) Defendants moved to transfer venue on December 1, 2014. (*See* ECF No. 8.) On February 4, 2015, the Honorable Judge Mitchell S. Goldberg granted the motion and transferred the case to this Court pursuant to 28 U.S.C. §1404(a). (ECF No. 25.)

1

This products liability case arises from a gruesome injury suffered by Plaintiff while working at Shirley's Cookie Company ("Shirley's"). On January 18, 2013, two of Plaintiff's fingers were severed while she was cleaning a machine manufactured and supplied by Defendants.[1] (ECF No. 1, exhibit A, at ¶¶ 8-16.) The machine, known as a "filling depositor," is part of an assembly line and is used to deposit filling onto a sheet or another product such as a cookie. (*See* ECF No. 60, exhibit 1, at 2.) To operate the depositor, an employee must pour the substance to be deposited into a hopper. (*Id.*) The bottom of the hopper contains pistons that direct the substance into plastic tubes that bring it to where it will be deposited. (*Id.*) One day, Plaintiff stuck her hand into the hopper to clean the plastic tubes at the bottom of the hopper, and another employee turned on the machine, which caused the pistons to activate and sever two of Plaintiff's fingers. (*See Id.* at 33.)

Plaintiff sued Defendants on a strict products liability theory. (*See* ECF No. 1, exhibit A.) While Plaintiff does not state it explicitly, a careful reading of the Complaint indicates that Plaintiff alleges two theories for recovery under strict products liability.

First, Plaintiff claims that Defendants designed a defective product because the machine allegedly lacked "guards and [or] other safety devices," (*Id.* at ¶ 18, ¶ 74(c), ¶ 74(f)), did not have a "lock-out tag-out functionality," (*Id.* at ¶ 74(d)), and did not have a

---

[1] It is undisputed that Defendant Rondo Burgdorf AG manufactured the machine that injured plaintiff (*see* ECF 60, exhibit 1 at 15) and that Defendant Rondo, Inc. sold the machine to plaintiff's employer. (*See* ECF No. 40, at ¶60.) For the purposes of this opinion, Defendant Rondo Burgdorf AG and Defendant Rondo, Inc. are referred to jointly as "Defendants."

"tool [or] machine which would have prevented Plaintiff from having to place her hand inside the machine to implement a bake." (*Id.* at ¶ 74(e).)

Second, Plaintiff asserts that Defendants provided a defective product because they failed to provide "adequate warnings" (*Id.* at ¶ 74 (a)), failed to "adequately detail dangers and procedures in its operation manual" (*Id.* at ¶ 74 (b)), and failed to update warnings about the machine after its sale to Plaintiff's employer. (*Id.* at ¶ 74 (h), ¶ 74 (j).)

Plaintiff seeks compensatory and punitive damages.

## IV. Legal Standard

"Summary judgment is appropriate only where ... there is no genuine issue as to any material fact ... and the moving party is entitled to judgment as a matter of law." *Melrose, Inc. v. Pittsburgh*, 613 F.3d 380, 387 (3d Cir.2010) (*quoting Ruehl v. Viacom, Inc.*, 500 F.3d 375, 380 n. 6 (3d Cir.2007)); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); Fed.R.Civ.P. 56(a). Issues of fact are genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see also McGreevy v. Stroup*, 413 F.3d 359, 363 (3d Cir. 2005). Material facts are those that will affect the outcome of the trial under governing law. *Anderson*, 477 U.S. at 248. The Court's role is "not to weigh the evidence or to determine the truth of the matter, but only to determine whether the evidence of record is such that a reasonable jury could return a verdict for the nonmoving party." *Am. Eagle Outfitters v. Lyle & Scott Ltd.*, 584 F.3d 575, 581 (3d Cir. 2009). "In making this determination, 'a court must view the facts in the light most favorable to the nonmoving party and draw all inferences in that party's favor.'" *Farrell v. Planters Lifesavers Co.*, 206

3

F.3d 271, 278 (3d Cir.2000) (*quoting Armbruster v. Unisys Corp.*, 32 F.3d 768, 777 (3d Cir. 1994).

The moving party bears the initial responsibility of stating the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. If the moving party meets this burden, the party opposing summary judgment "may not rest upon the mere allegations or denials" of the pleading, but "must set forth specific facts showing that there is a genuine issue for trial." *Saldana v. Kmart Corp.*, 260 F.3d 228, 232 (3d Cir. 2001) (*quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 n. 11 (1986)). "For an issue to be genuine, the nonmovant needs to supply more than a scintilla of evidence in support of its position—there must be sufficient evidence (not mere allegations) for a reasonable jury to find for the nonmovant." *Coolspring Stone Supply v. Am. States Life Ins. Co.*, 10 F.3d 144, 148 (3d Cir.1993); *see also Podobnik v. U.S. Postal Serv.*, 409 F.3d 584, 594 (3d Cir. 2005) (noting that a party opposing summary judgment "must present more than just bare assertions, conclusory allegations or suspicions to show the existence of a genuine issue") (internal quotation marks omitted).

V.  Discussion

a. Strict Products Liability in Pennsylvania

Plaintiff bring her products liability claims under Pennsylvania law. (*See* ECF No. 74, p. 8.) "In products liability cases, Pennsylvania follows the formulation of strict liability set out in Section 402A of the Restatement (Second) of Torts." *Smith v. Howmedica Osteonics Corp.*, 2017 WL 1508992 at 2 (E.D. Pa. 2017), *citing Webb v. Zern*, 422

4

Pa. 424 (Pa. 1966) (adopting the language of Section 402A as the law of the Commonwealth); *see also Tincher v. Omega Flex, Inc.*, 628 Pa. 296 (Pa. 2014). Under Section 402A, a plaintiff can recover under a theory of strict liability where his or her injury was caused by a product in "a defective condition unreasonably dangerous to the user or consumer." *Phillips v. A-Best Prod. Co.*, 665 A.2d 1167, 1170-71 (Pa. 1995). "A defective condition may be established by proving either a manufacturing defect, a design defect, or a failure-to-warn defect." *Smith*, 2017 WL 1508992 at 2, citing *Phillips*, 665 A.2d at 1170-71. In this case, Plaintiff alleges a design defect and a failure to warn defect. (*See* ECF No. 1, exhibit A, ¶ 74.)

To establish a *prima facie* case under Section 402A, "a plaintiff must establish that the product was defective, that the defect was a proximate cause of the plaintiff's injuries, and that the defect causing the injury existed at the time the product left the seller's hands." *Davis v. Berwind Corp.*, 547 Pa. 260, 268 (Pa. 1997) (internal citations omitted). "The seller is not liable if a safe product is made unsafe by subsequent changes." *Id.* "Where the product has reached the user… with substantial change, the question becomes whether the manufacturer could have reasonably expected or foreseen such an alteration of its product." *Id.* (internal citations omitted).

Under Pennsylvania products liability law, summary judgment is appropriate if the manufacturer could not have foreseen the subsequent changes that made the product unsafe. *Sikkelee v. AVCO Corporation*, 2017 WL 3317545 at 36-37 (M.D. Pa. 2017), citing *Davis v. Berwind Corp.*, 433 Pa.Super. 342 (1994), aff'd, 547 Pa. 260 (1997); *see also Fisher v. Walsh Parts & Service Co., Inc.*, 296 F.Supp.2d 551, 563 (E.D. Pa. 2003)

5

(foreseeability of subsequent changes is a question for the factfinder "unless the inferences are so clear that a court can say as a matter of law that a reasonable manufacturer could not have foreseen the change.").

As noted above, a careful reading of the complaint reveals that Plaintiff's "Products Liability" claim (Count I) is really two claims: (1) defective design and (2) a defect based on failure to warn. The Court will address these claims in turn.

### b. Defendants Are Entitled to Summary Judgment on Plaintiff's Defective Design Claims

The record unambiguously demonstrates that the filling depositor was designed with various safety features to prevent an employee's fingers from coming into contact with the pistons. As explained below, there is no genuine dispute of material fact as to whether the depositor was defective when installed, or as to whether Defendants could have foreseen the subsequent removal of the safety devices that made the product unsafe.

Despite Plaintiff's prior allegations in her complaint,[2] it is undisputed that when Defendants installed the filling depositor it had a safety guard over the hopper. (*See* Plaintiff's Response to Defendant's Concise Statement of Material Facts, ECF No. 75, at ¶ 26; Engineer's Report by Plaintiff's expert, ECF No. 132, exhibit 1, at 3, stating that when Defendants "installed... the filling depositor, it had a guard over the top of the hopper."; see also Deposition of William Feathers, ECF No. 106, exhibit 3, at 17.) Also, despite Plaintiff's assertion to the contrary in her complaint, it is undisputed that the

---

[2] Plaintiff alleged in her complaint that the filing depositor was defectively designed because it lacked a safety "guard" and did not have "lock-out" functionality." (See ECF No. 1, exhibit A at ¶ 74(c), ¶ 74(d), ¶ 74(f).)

6

depositor did in fact have lock-out capability. (*See* Deposition of Plaintiff's expert, ECF No. 133, exhibit 1, at 81-82.) Therefore, there is no genuine dispute of material fact regarding these issues.

Additionally, it is uncontested that the depositor originally had a limit switch, which prevented the machine from running unless the cover guard were in place. (*See* ECF No. 106, exhibit 3, at 18; ECF No. 132, exhibit 1, at 4.) Plaintiff alleges that the depositor was defectively designed because the limit switch only had two positions which, according to her expert, would potentially allow the depositor to operate even if the cover guard were removed. (*See* Plaintiff's Expert Engineer's Report, ECF No. 132, exhibit 1, at 4.) However, in his deposition, Plaintiff's expert acknowledged that when he wrote his expert report stating that the limit switch was defectively designed, he had not personally examined the depositor (*see* ECF No. 133, exhibit 1, at 30); he further stated that he does not know whether the limit switch on the depositor that injured Plaintiff had two or three positions. (Id. at 45.) He also testified at his deposition that if the limit switch did in fact have three positions, he would no longer conclude that limit switch was defectively designed. (*See Id.* at 48-49.) Defendants have presented evidence that the limit switch did, in fact, have three positions. (*See* Declaration of Jurg Schneider, ECF No. 60, exhibit 1, at ¶¶ 8-28; Report by Brian O'Donel, ECF No. 60, exhibit 1, at 5-6.) Plaintiff has not come forward with any evidence in rebuttal. Therefore, there is no genuine dispute of material fact regarding this issue.

Plaintiff alleges that the limit switch was defectively designed because it could be "electronically circumvented." (*See* ECF No. 75, at ¶¶ 15, 16, 18, 19.) To support this

7

claim, Plaintiff cites to the part of the expert's report where he is discussing the limit switch. (ECF No. 132, exhibit 1, at 4.) However, as described above, Plaintiff's expert admitted in his deposition that if the limit switch had three positions, he would no longer make Conclusion Number 1 of his expert report, i.e. that the limit switch was defectively designed. (*See* ECF No. 60, exhibit 1, at 47.) Moreover, Plaintiff's speculation that the depositor's safety mechanisms were inadvertently disabled by improper reassembly is not supported by the record.

Finally, Plaintiff alleges that the depositor was defectively designed because it "did not incorporate... a tool [or] machine which would have prevented Plaintiff from having to place her hand inside the machine to perform a bake." (*See* ECF No. 1, exhibit A at ¶ 74(g).) However, Plaintiff confuses the issue. The problem is not that Plaintiff needed to reach her hand inside the machine to clean it, but rather that the machine was able to turn on without the cover guard in place. As noted above, it is undisputed that as manufactured and installed, the depositor would not function with the cover guard removed. Had the machine not been re-wired to circumvent the safety measures, the machine could not have turned on without the cover guard, and Plaintiff could not have been injured while cleaning the machine.

For the reasons explained above, this Court finds that no reasonable fact-finder could conclude that the machine was defectively designed. Because there is no genuine dispute of material fact that the depositor was not defective when manufactured, sold, and installed by Defendants, Plaintiff must show that Defendants could have

reasonably expected the subsequent alterations that made the depositor unsafe. *See Davis*, 547 Pa. 260.

This case is governed by *Davis*, a case with similar facts to the case at bar. The plaintiff in *Davis* was injured when her hand came into contact with rotating blades inside of a meat blender, severing three of her fingers. *Id* at 264. The defendants manufactured and delivered the blender with several safety features to protect against the type of accident that the plaintiff suffered, such as an interlocking door that blocked access to the grinding area if either of the operator's hands were removed from the control panel. *Id.* at 264. In addition, the blender's operating manual, which had been provided to plaintiff's employer, prohibited using the machine without the safety devices in place. *Id*. However, prior to plaintiff's injury, her employer had removed the safety interlock to allow two workers to operate the blenders at the same time and increase production speed. *Id*. If the safety devices had still been in place, plaintiff's injury would not have occurred. *Id.* at 265.

The Superior Court of Pennsylvania granted judgment notwithstanding the verdict in favor of defendants. The court held that, as a matter of law, if a product is substantially altered by the removal of a safety device, and the manufacturer has warned against such an alteration, "the alteration rises to the level of an intervening or superseding cause of the injury, breaking the chain of causation and relieving the manufacturer of liability." *Davis v. Berwind Corp.*, 433 Pa.Super. 342, 363 (1994). The Pennsylvania Supreme Court affirmed, holding that the lower court "properly concluded that the Appellees were entitled to judgment as a matter of law" on the

question of foreseeability. *Davis*, 547 Pa. at 268-69 (ruling that it was not foreseeable that the machine could be operated without the safety device, and noting that to require a manufacturer to anticipate that the user will engage in the conduct warned against would "render[] warnings of any nature meaningless.").

As in *Davis*, Plaintiff was injured while operating a machine that was safe when manufactured and delivered, but later modified and made unsafe. As in *Davis*, the removal of the safety devices constituted a substantial change to the machine. And, as in *Davis*, the safety devices were ostensibly removed despite clear warnings in the operating manual that explicitly warned against tampering with the machine's safety mechanisms. Therefore, the substantial alterations were unforeseeable as a matter of law. *Davis*, 547 Pa. 260.

Plaintiff attempts to distinguish her case from *Davis* by arguing that while the alterations to the blender in *Davis* were intentional, the alterations to the filling depositor that injured Plaintiff were inadvertent and therefore foreseeable. (ECF No. 74, at 10.) This Court is not persuaded that the rule from *Davis* only applies if the substantial alteration was intentional. Both the Superior and the Supreme Court opinions emphasize that the question is whether the substantial alteration was foreseeable, not whether it was intentional.[3] Moreover, other courts that have been presented with similar issues have focused on the foreseeability of the substantial alterations that made the product less safe, not whether the alterations were deliberate.

---

[3] The Court notes that neither the word "intentional" nor "intentionally" appear in the Superior Court's majority opinion., *see Davis*, 433 Pa.Super. 342, and observes that the word "intentional" appears only once in the Supreme Court's majority opinion, in footnote 5. *Davis*, 547 Pa. 269.

10

*See. e.g., Rivera v. Mosseberg Industries, Inc.*, 2000 WL 464058 (E.D. Pa. 2000) (granting summary judgment in favor of defendant); *Fisher v. Walsh Parts & Service Co., Inc.*, 296 F.Supp.2d 551 (E.D. Pa. 2003).

Additionally, Plaintiff has failed to point to any evidence that supports her speculation that the machine was inadvertently rewired to circumvent the safety mechanisms. In her Response to Defendants' Concise Statement of Material Facts, Plaintiff directs the Court to two places in the record, neither of which support her assertion that the safety devices were disabled through inadvertent rewiring.[4] First, Plaintiff cites the testimony of an employee who began working for Plaintiff's employer *two years after* the depositor was purchased, and who states that he cannot remember a time when the cover guard was on the filling depositor. (*See* Deposition of Bruce Woodring, ECF No. 107, exhibit 1, at 15, 40.) Second, Plaintiff relies on the testimony of Shirley's president who (1) states that the cover guard was in place and functional when the depositor was installed, and (2) states that the equipment was disassembled when the company moved to a new location in 2003 and reassembled in the new location

---

[4] In Plaintiff's Response to Defendant's Concise Statement of Material Facts, Plaintiff also asks the Court to consult the "numerous other documents and testimony in the record," and cites over 4,600 pages of discovery documents. In fact, Plaintiff repeats the same language, and cites to over 4,600 pages of discovery documents, ten (10) times in her five-page Statement. This Court feels compelled to remind Plaintiff that, under FRCP 56(c)(1)(A), "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by... citing to **particular parts** of materials in the record..." (emphasis added). This Court also directs Plaintiff to pages 3 and 4 of the Final Scheduling Order in this case, which read: "The brief in opposition to a motion for summary judgment shall be accompanied by a separately filed document entitled 'Response to Movant's Concise Statement of Undisputed Material Facts' in strict compliance with Local Rule of Court 56.C. The response shall set forth, in separately numbered paragraphs corresponding to the paragraphs set forth in the movant's 'Concise Statement of Undisputed Facts,' an answer to each of the numbered averments of fact set forth in the movant's statement and shall state whether each of the movant's averments of fact are disputed and/or material. If a fact is not admitted in its entirety (as to whether it is undisputed or material), the respondent shall state a concise counter-statement of the matter disputed. At the conclusion of each counter-statement, respondent shall refer, **with particularity**, to those portions of the record upon which respondent relies." (ECF No. 50.) (emphasis added).

thereafter. (Deposition of William Feathers, ECF No. 106, exhibit 3, at 18, 20.) Mr. Feathers further testifies that he does not know when or where the safety guard was removed from the depositor. (*Id.* at 21.) Only the statement that the equipment was disassembled at one location and then reassembled at a new location supports to some extent Plaintiff's speculation that the safety devices were disabled inadvertently due to improper reassembly. Still, even if the safety mechanism were inadvertently disabled through improper reassembly, this would not make the removal of the safety devices foreseeable as is required to impose liability on Defendants.

It is undisputed that the depositor was "dismantled, moved, and reassembled" at the new location in 2003.[5] (*See* ECF Np. 60, exhibit 1, 15.) It is also undisputed that, when Shirley's moved the depositor, it did not contact Defendants to help disassemble or reassemble it. (ECF No. 106, exhibit 3, at 15.) In fact, Shirleys did not hire any professional contractors to help move and reconstruct the depositor. (*Id.*) This violated the clear warnings in the safety manual, which state that "any work on the electrical components of the machine… must be carried out by qualified personnel who are familiar with the prescribed stated instructions," and warn that "[p]rotective covers over the electrical controls and the mechanical moving parts may only be removed by professionally qualified personnel and must be remounted before the machine is put back into operation." (ECF No. 137, exhibit 1, at 2.)

---

[5] Plaintiff also suggests that the safety devices may have been lost in transit, but similarly provides nothing more than speculation to support this contention. However, this is a non-sequitur, as it does not support the notion that the substantial alteration to the machine was foreseeable.

12

On a similar note, Plaintiff argues that the it was foreseeable that the depositor would be substantially altered because the depositor, as designed, would still operate without the cover guard in place if it were inadvertently improperly assembled. (ECF No. 75, ¶ 7.) Plaintiff's expert states in his report that the safety system could potentially be disabled accidentally or intentionally, while still allowing the depositor to operate without a cover guard. (ECF No. 132, exhibit 1, 4.) However, the fact that the system could possibly be disabled does not make it foreseeable that it would be, especially given that a warning on the machine, and a warning in the safety manual itself, cautioned against using the machine without the safety guard in place. *See Davis*, 547 P.a. at 268-69 (finding "untenable the proposition that a manufacturer must anticipate that a specific warning not to operate a product without a safety device indicates to a user that the product could, in fact, be operated without the safety feature.")

Plaintiff cites *Sweitzer v. Dempster Systems, a Div. of Carrier Corp.*, 372 Pa.Super. 449 (1988) to support her argument that this Court should not follow *Davis*, 547 Pa. 260 in finding that the alteration was unforeseeable as a matter of law. However, *Sweitzer*, a Superior Court case, was decided almost a decade before *Davis*, a Supreme Court case. Furthermore, *Sweitzer* and this case are not analogous. In *Sweitzer*, the court held that the jury should have received an instruction about foreseeability. The court noted that witnesses at trial testified the safety lock was "not compatible with the environment" where it was used (*Id.* at 454), and stated that the safety locks "didn't work properly" and "were prone not to work by design… [which] caused people to take them off the truck." *Id.* at 454-55. Here, Plaintiff has not come forward with evidence that suggests

13

any of the safety devices on the depositor were incompatible with the environment where they were used, nor that they were prone to break or not function properly.

In sum, Plaintiff has failed to present any evidence from which a reasonable factfinder could conclude that the removal of the safety mechanisms from the filling depositor was foreseeable. Therefore, as a matter of law, Defendants are not liable for injuries resulting from the removal of the safety devices. Therefore, this Court grants summary judgment in favor of Defendants on Plaintiff's defective design claim.

### c. Defendants Are Entitled to Summary Judgment on Plaintiff's Failure to Warn Defect Claim

"The determination of whether a warning is adequate and whether a product is 'defective' due to inadequate warnings are questions of law to be answered by the trial judge." *Davis*, 547 Pa. at 267.

A plaintiff "cannot succeed on [a] failure to warn claim [if] the evidence establishes that if the plaintiff had heeded the warnings... he would not have been injured." *Robinson v. Delta Inter. Machinery Corp.*, 274 F.R.D. 518 (E.D. Pa. 2011). *See also Davis*, 547 Pa. at 268 (declining to "require a manufacturer to warn against dangers that may arise if the stated warnings are not heeded," and noting that such a requirement would be "unreasonable and unwarranted since the law presumes that warnings will be obeyed.").

If a product contains a sufficiently clear warning, and the purchaser or user disregards that warning and is injured as a result, the manufacturer is not liable as a matter of law. *Davis*, 547 Pa. at 267 (affirming lower court's grant of judgment n.o.v. in

favor of defendant when plaintiff was injured after inserting hand into machine despite visible warning that stated "DANGER: KEEP FINGERS OUT OF DOOR OPENINGS"); *see also Rivera v. Mossberg Industries, Inc.*, 2000 WL 464058 at 6 (E.D. P.a. 2000) (granting summary judgment for defendant when the plaintiff disregarded a warning that read, "KEEP HAND OUT OF CUTTING CHAMBER WHILE MACHINE IS UNDER POWER"); *see also Makadji v. GPI Div. of Harmony Enterprises, Inc.*, 2006 WL 3498324 at 3 (granting summary judgment on manufacturer's failure to warn claim when machine contained warnings that read, "CAUTION: TO AVOID INJURY KEEP HANDS CLEAR OF THE MACHINE WHILE IN OPERATION," and Plaintiff was injured in manner predicted by warning).

Plaintiff claims that the depositor was defective because Defendants failed to provide "adequate warnings" and failed to "adequately detail dangers and procedures in its operation manual" (*See* ECF No. 1, exhibit A at ¶ 74(a), ¶ 74(b)). But Plaintiff's conclusory allegations are not supported and, in fact, are plainly contradicted by the record. Defendants have provided uncontested evidence that there were warnings on the depositor itself, one which showed an image of a hand being injured and a warning that read, on bold caps, "DANGER: DO NOT OPERATE THIS MACHINE WITHOUT GUARDS." (ECF No. 60, exhibit 1, at 44 (Figure 7).) The owner of Shirley's testified that he was not aware of any of the safety labels or stickers having been added since the depositor was delivered. (ECF No. 106, exhibit 3, at 20.) Plaintiff has not presented any evidence that the warnings were not on the machine when it was installed.

Plaintiff claims that this warning was inadequate because it was located "on the back of the machine." (ECF No. 75, at ¶ 22.) However, Plaintiff's claim about the location of the warning is not supported by the record. Plaintiff's expert notes in his expert report that the warning was "on the lower portion of the depositor, presumably on the cover of the... cylinders" (ECF No. 132-1, at 4.), which is located on "the lower cover of the depositor." (*Id.* at 13 (Figure 6).)

Plaintiff further claims that the warnings were inadequate because there was no "warning on the top of the hopper that warned of its use without a safety guard." (ECF No. 74, at 14.) However, Defendants have presented uncontested evidence that Defendants provided Plaintiff's employer with an operating manual when they delivered depositor, and that the manual included the warnings that stated, among other things, "[s]afety devices on the machine may not be adjusted, shorted out, or expanded," and "[o]peration of the machine when any of the safety devices is out of order is prohibited." (*Id.*) Moreover, as noted above, the law presumes that warnings will be heeded. *Davis*, 547 Pa. at 267-68. Finally, while the warning was posted on the depositor, and was not located on the hopper itself, a cover guard was supposed to be in place on top of the hopper which would have prevented Plaintiff's injury.

Plaintiff also alleges that the depositor was defective because it failed to warn its operator that it, "upon reassembly, it was possible for the filing [sic] depositor to be operated without the safety guard in place." (ECF No. 74 at 14.) But, as stated above, Plaintiff has not presented a scintilla of evidence which suggests that the depositor's

16

limit switch was unintentionally disabled upon reassembly; rather, this is offered only as a theory and conclusion of Plaintiff.

Plaintiff's claim that the depositor was defective for failure to warn is based upon "just bare assertions, conclusory allegations or suspicions" which fail to show the existence of a genuine issue for trial. *Podobnik*, 409 F.3d at 594. It is uncontested that (1) the depositor had a sticker which contained a visible written warning against operating the machine without the safety guard in place; (2) the sticker contained a warning in the form of a picture of a hand being pierced by a sharp piston-like object, which warned against the very injury that Plaintiff suffered; and (3) Defendants delivered a standard operating manual to Plaintiff's employer at the time of instillation, which specifically stated that altering or removing the safety protections was prohibited. Therefore, Defendants are entitled to judgment as a matter of law on the failure to warn claim. *Davis*, 547 Pa. 260.

This Court finds that there is no evidence in the record which would permit a reasonable juror to conclude that Defendants are strictly liable under a failure to warn theory. Therefore, this Court grants summary judgment for Defendant on Plaintiff's failure to warn claim.

### d. This Court Must Dismiss Plaintiff's Punitive Damages Claim

"If no cause of action exists, then no independent action exists for a claim of punitive damage since punitive damages is only an *element* of damages." *Kirkbride v. Lisbon Contractors, Inc.*, 521 Pa. 97, 101 (1989); *see also Costa v. Roxborough Memorial Hosp.*, 709 A.2d 490, 497 (1998) (noting that "[i]t is axiomatic... that a claim for punitive

17

damages arises out of the underlying cause of action and, therefore, absent a viable cause of action, an independent claim for damages cannot stand.").

Because this Court finds that Defendants are entitled to summary judgment on the underlying cause of action, this Court must dismiss Plaintiff's claim for punitive damages as moot.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SHELLY ROUDABUSH, | ) | |
| | ) | |
| Plaintiff, | ) | CIVIL ACTION NO. 3:15-CV-059 |
| | ) | |
| v. | ) | JUDGE KIM R. GIBSON |
| | ) | |
| RONDO, INC., RONDO BURGDORF AG, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER

AND NOW, this 5th day of September, 2017, upon consideration of the motion for summary judgment filed by Defendants Rondo, Inc. and Rondo Burgdorf AG (ECF No. 59), and in accordance with the accompanying memorandum opinion (ECF No. 60), **IT IS HEREBY ORDERED** that the motion for summary judgment is **GRANTED** in favor of Defendants on all of Plaintiff's claims, which are dismissed with prejudice.

BY THE COURT:

KIM R. GIBSON
UNITED STATES DISTRICT JUDGE